# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 11, 2024

Lyle W. Cayce
Clerk

No. 23-20539

———————

Alejandro Martinez,

*Plaintiff—Appellant*,

*versus*

City of Rosenberg, Texas; Officer R. Cantu; Officer R. Dondiego; Officer Josh Manriquez; Officer Jeremy Reid; Officer Shelby Macha; Officer Ramon Gallegos; Officer Earnest Torres,

*Defendants—Appellees*.

———————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CV-432

———————————————————

Before Higginbotham, Stewart, and Higginson, *Circuit Judges*.
Patrick E. Higginbotham, *Circuit Judge*:

Appellant Alejandro Martinez sued the City of Rosenberg and several of its police officers under 42 U.S.C. § 1983, alleging that they arrested him without probable cause and used excessive force to effectuate the arrest in violation of his Fourth Amendment rights. The district court dismissed Martinez's claim against the City for failure to state a claim of municipal liability under *Monell v. Department of Social Services of the City of New York*.

No. 23-20539

The court also dismissed his claims against the Officers on qualified immunity grounds. Martinez appealed, arguing these orders were erroneous. We find no error and AFFIRM.

## I.

## A.

On February 6, 2019, Alejandro Martinez was walking home when Officer Cantu of the City of Rosenberg Police Department stopped him for walking on the wrong side of the street in violation of the Texas Transportation Code.[1] Cantu did not tell Martinez he was under arrest but asked him to "come here" several times, purportedly to advise Martinez about safely walking along the road. Martinez originally complied but, after speaking with Cantu for approximately one minute, began to walk away. Cantu did not tackle Martinez but put his arms around Martinez's upper body and neck, and took him to the ground for handcuffing. Dash camera footage captured Martinez complaining of pain.

Officer Dondiego arrived on the scene and helped Cantu handcuff Martinez. Four additional officers—Officers Gallegos, Macha, Reid, and Manriquez—arrived and escorted Martinez to a squad car. Martinez was transferred to Oak Bend Medical Hospital for a medical evaluation. Medical staff reported that Martinez's pain was "chronic," he had no broken bones, and he was sufficiently mobile. After administering pain medicine, the hospital cleared Martinez and deemed him fit for jail.

## B.

_____

[1] Tex. Trans. Code § 552.006(b) ("If a sidewalk is not provided, a pedestrian walking along and on a highway shall walk on the left side of the roadway or the shoulder of the highway facing oncoming traffic, unless the left side of the roadway or the shoulder of the highway facing oncoming traffic is obstructed or unsafe.").

No. 23-20539

On February 8, 2021, Martinez brought suit against the City of Rosenberg as well as Officers Cantu, Dondiego, Manriquez, Reid, Macha, Gallegos, and Torres in their individual capacities. As amended and relevant here, the operative complaint asserted claims of (1) municipal liability against the City pursuant to 42 U.S.C. § 1983; (2) unlawful seizure and excessive use of force in violation of the Fourth Amendment against the Officers; and (3) liability for failure to intervene (i.e., bystander liability) against all of the Officers.

The City moved to dismiss Martinez's municipal liability claim under Federal Rule of Civil Procedure 12(b)(6), arguing Martinez failed to state a claim of municipal liability pursuant to *Monell v. Department of Social Services of the City of New York*.[2] The district court granted the motion, first determining that Martinez failed to allege a pattern of unlawful behavior, as his complaint "only offered facts related to the single, isolated incident that is the basis for this suit." The district court went on to explain that Martinez offered only "conclusory statements" regarding the City's use of force policy. Accordingly, the district court dismissed Martinez's claims against the City.

The Officers then filed motions for summary judgment on Martinez's remaining Fourth Amendment claims and provided body-worn and dash camera video footage as support. The district court found the Officers had not violated Martinez's constitutional rights and granted the motion on all counts. Regarding Martinez's unlawful arrest claim, the district court found Cantu had probable cause to stop and arrest Martinez because he was in clear violation of the Texas Transportation Code. The video footage captured Martinez walking with the flow of traffic, on the righthand side of street for

---

[2] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

No. 23-20539

"at least ten seconds." Because the Texas Transportation Code requires pedestrians to walk on the lefthand side of the street facing oncoming traffic, this violated Texas law and provided probable cause for the stop and arrest.[3] The district court held that Martinez failed to create a genuine dispute of material fact on his excessive force claim because he offered no evidence that he was injured by the incident. The district court further found that the Officers used reasonable force when effectuating the arrest. Finally, the court granted summary judgment in the Officers' favor on the bystander liability claim, which could not stand absent a constitutional violation.

Martinez now appeals the district court's dismissal of his *Monell* claim against the City, as well as the grant of summary judgment in the Officers' favor.

## II.

First, Martinez argues the district court erred by dismissing his claims against the City. This court reviews de novo a district court's grant of a motion to dismiss for failure to state a claim.[4] To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[5] We accept as true all well-pleaded facts and construe them in the light most favorable to the plaintiff,[6] but "we do not accept as true legal

_____

[3] Tex. Trans. Code § 552.006(b).

[4] *Guerra v. Castillo*, 82 F.4th 278, 284 (5th Cir. 2023) (citing *Clyce v. Butler*, 876 F.3d 145, 148 (5th Cir. 2017)).

[5] *Crane v. City of Arlington, Tex.*, 50 F.4th 453, 461 (5th Cir. 2022), *cert. denied sub nom. City of Arlington v. Crane*, 144 S. Ct. 342 (2023), *and cert. denied sub nom. Roper v. Crane*, 144 S. Ct. 342 (2023) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[6] *Id.*

conclusions, conclusory statements, or naked assertions devoid of further factual enhancement."[7]

Successful *Monell* claims require "that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right."[8] An official policy is evinced by a widespread pattern or practice "that is so common and well-settled as to constitute a custom that fairly represents municipal policy" or, occasionally, when an official with final policymaking authority ratifies a subordinate's unconstitutional conduct.[9]

We affirm the district court's ruling that Martinez failed to state a claim under *Monell*. The operative complaint is conclusory, as it vaguely alleges a pattern of "excessive force and condoning excessive force" without providing factual context or supporting details—such as dates, the officers involved, or the injuries received. Likewise, the complaint claims that a "lack of proper training" led to the "widespread practice of using and condoning excessive force," but Martinez does not detail the training received (or lack thereof) or explain how it contributed to the "widespread practice" of force. Finally, the complaint fails to state a plausible *Monell* claim on a ratification theory, as it does not identify the specific official involved. At bottom,

---

[7] *Guerra*, 82 F.4th at 284 (citation omitted).

[8] *Doe v. Burleson Cnty., Tex.*, 86 F.4th 172, 176 (5th Cir. 2023) (citation omitted).

[9] *St. Maron Properties, L.L.C. v. City of Hous.*, 78 F.4th 754, 760 (5th Cir. 2023) (citing *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214–15 (5th Cir. 2019)); *Webb*, 925 F.3d at 217 ("Even when an official with final policymaking authority does not directly act to set policy, a municipality may be liable in 'extreme factual situations' when that official ratifies a subordinate's decision, which requires more than the defense of a decision or action shown to be unconstitutional after the fact.") (citing *Davidson v. City of Stafford*, 848 F.3d 384, 395–96 (5th Cir. 2017), *as revised* (Mar. 31, 2017)).

No. 23-20539

Martinez's allegations amount to mere "naked assertions devoid of further factual enhancement."[10]

## III.

Next, we address whether the district court properly granted summary judgment in the Officers' favor on Martinez's unlawful arrest and excessive use of force claims.

Grants of summary judgment are reviewed de novo.[11] On summary judgment, the movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[12] The court reviews the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in its favor.[13] When a defendant moves for summary judgment on the basis of qualified immunity, "the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law."[14]

"The constitutional claim of false arrest requires a showing of no probable cause."[15] "To establish a claim of excessive force under the Fourth Amendment, plaintiffs must demonstrate: '(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the

_____

[10] *Guerra*, 82 F.4th at 284.

[11] *Crane*, 50 F.4th at 461 (citation omitted).

[12] FED. R. CIV. P. 56(a); *see also Deville v. Marcantel*, 567 F.3d 156, 163 (5th Cir. 2009) (per curiam).

[13] *Deville*, 567 F.3d at 163–64.

[14] *Crane*, 50 F.4th at 461 (quoting *Aguirre v. City of San Antonio*, 995 F.3d 395, 406 (5th Cir. 2021)).

[15] *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009) (citation omitted).

excessiveness of which was clearly unreasonable.'"[16] The injury prong requires more than a de minimis injury in most instances.[17]

We have reviewed the briefs, the applicable law, and pertinent parts of the record; we have also heard oral argument. The judgment is AFFIRMED as to both claims, essentially for the reasons stated in the district court's order. Officer Cantu had probable cause to arrest Martinez because the dash camera footage indisputably captured Martinez walking on the righthand side of the road for several seconds, in violation of the Texas Transportation Code.[18] With respect to Martinez's excessive use of force claim, we agree with the district court that any injury was de minimis, and Cantu used reasonable force given the totality of the circumstances. Finally, the district court properly dismissed Martinez's bystander liability claim because it cannot stand absent an underlying constitutional violation.

## IV.

With all due respect to the dissent, this is not a jaywalking case. To the contrary, the officer was enforcing a provision of the Texas Transportation Code that requires pedestrians to walk on the side of the roadway facing oncoming traffic. Walking on the side of the road with one's back to traffic poses considerably greater risk than jaywalking where the exposure of the pedestrian is quite different.

The significance accorded this provision by its placement in the Texas Transportation Code provides an important backdrop to the mission of

---

[16] *Buehler v. Dear*, 27 F.4th 969, 981 (5th Cir. 2022).

[17] *Id.* at 982; *Solis v. Serrett*, 31 F.4th 975, 981 (5th Cir. 2022) ("[a]ny force found to be objectively unreasonable necessarily exceeds the de minimis threshold.") (quoting *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017)).

[18] Tex. Trans. Code § 552.006(b).

Officer Cantu.  His unchallenged affidavit explained that he confronted Martinez not to arrest him but to explain the importance of the provision that forbade Martinez's action. Namely, that Martinez's action was a threat to himself.

Martinez chose not to listen to Officer Cantu and instead walked away from him.  Officer Cantu faced the choice of either being ignored or enforcing the statute.  Officer Cantu decided to place his arm over Martinez's shoulder and bring him to the ground. Based on our review of video evidence, this maneuver would be unlikely to have caused pain to Martinez but for the fact that Martinez had a deformity unknown to Officer Cantu.

That said, this case remains close. Perhaps in one sense, it is a tie. But the officer should not be held liable for damages when there is no evidence of injury in the record and Qualified Immunity protects the officer's honest mistake.

Accordingly, we AFFIRM the district court's judgment.

No. 23-20539

Stephen A. Higginson, *Circuit Judge*, dissenting:

"[J]aywalking is endemic but rarely results in arrest." *Nieves v. Bartlett*, 587 U.S. 391, 407 (2019).

If you watch the video of the interaction at issue here, you will see the following: At 4:35:02 P.M. on February 6, 2019, Alejandro Martinez is walking towards his home in Rosenburg, Texas on a residential street without sidewalks. At 4:35:17 P.M., Officer Ryan Cantu pulls over, jumps out of his car, and calls "let me talk to you" to Martinez, who walks back towards him from about ten feet away. At 4:36:29 P.M., Martinez is on the ground, shouting "Please! You're hurting my arm! You're hurting my arm!" In that brief window of time, Officer Cantu has slammed him to the ground.

Does the law of this country countenance this kind of force from those charged with protecting their communities? Because Martinez was walking on the wrong side of that street, in violation of state law, and because he turned his shoulder slightly, as if to walk away—but did not walk away—the Defendants argue that it does. The majority seems to agree, stating that Officer Cantu's force was "reasonable."

I respectfully dissent.[1]

Summary judgment was inappropriate in this case. A jury should be allowed to view this video and hear the evidence as to whether Officer Cantu used excessive force when he brought Martinez to the ground one minute after he stopped him for walking on the incorrect side of a residential street on his way home. The factors articulated in *Graham v. Connor*, 490 U.S. 386, 396 (1989) and our caselaw suggest that he did.

_____

[1] I concur with the panel's opinion as to the municipal liability and unlawful arrest claims.

In determining the objective reasonableness of an officer's use of force, we consider (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396.

Here, Martinez's walked on the wrong side of the street—a minor traffic violation.[2] At oral argument, Officer Cantu's counsel admitted that Officer Cantu had no intention to arrest Martinez when he pulled him over. As our court has held on numerous occasions, use of force in such cases is often unreasonable. *See Bagley v. Guillen*, 90 F.4th 799, 803 (5th Cir. 2024) ("To begin with, he was pulled over for failing to use a turn signal. At most, this is a minor traffic violation."); *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (per curiam) ("Deville was stopped for a minor traffic violation— exceeding the 40 mph speed limit by 10mph—making the need for force substantially lower than if she had been suspected of a serious crime.").

Second, it would be *un*reasonable for an officer to believe that Martinez posed an immediate threat to the safety of others. When Officer Cantu called him over, Martinez approached slowly—with an obvious limp—and with his hands open in incredulity, showing that he did not possess a weapon. The officers have not claimed they feared for their safety. Although Martinez pulled his arm away from Officer Cantu, pulling one's arm "out of [an officer's] grasp, without more, is insufficient to find an immediate threat to the safety of the officers." *Ramirez v. Martinez*, 716 F.3d 369, 378 (5th Cir. 2013).

---

[2] *See* TEX. TRANS. CODE § 552.006(b) ("If a sidewalk is not provided, a pedestrian walking along and on a highway shall walk on the left side of the roadway or the shoulder of the highway facing oncoming traffic, unless the left side of the roadway or the shoulder of the highway facing oncoming traffic is obstructed or unsafe.").

And, while the third factor is *closer*, it still favors Martinez. "Officers may consider a suspect's refusal to comply with instructions . . . in assessing whether physical force is needed to effectuate the suspect's compliance." *Deville*, 567 F.3d at 167. However, our circuit has held that pulling one's arm away from an officer is not "resistance" sufficient to justify tackling, especially if the officer has no reason to believe that the arrestee is a threat. *See Trammell v. Fruge*, 868 F.3d 332, 341–42 (5th Cir. 2017) ("[I]t appears that Trammel's only physical resistance prior to being tackled was his attempt to pull his arm away. . . . Trammel was neither aggressive nor violent toward the officers prior to being tackled. . . . It is also unclear whether a reasonable officer would have thought that Trammel posed a danger to himself and others."); *see also Ramirez*, 716 F.3d at 378 (finding *Graham* factors supported finding of unreasonable force when "the only resistance [Ramirez] offered was pulling his arm out of [the officer's] grasp"); *Goodson v. City of Corpus Christi*, 202 F.3d 730 (5th Cir. 2000) (holding that "Goodson has produced sufficient summary judgment evidence to suggest that he suffered a broken shoulder as a result of being tackled by Gaines and Perez, who lacked reasonable suspicion to detain or frisk him and from whom he was not fleeing" even though he "yanked" or "pulled" his arm away from officers). Because all three of the *Graham* factors favor Martinez, Defendants are not entitled to summary judgment on the excessive force claim.

The majority opinion does not consider the substance of the excessive force claim, concluding that Martinez cannot state a claim at all because his injuries are de minimis.

Martinez's injuries are not de minimis. Throughout the video of the takedown, Martinez repeatedly shouts "Stop! You're hurting me!" and tells Officer Cantu that he is hurting his arms, which had been extensively injured from a prior car accident and had a limited range of motion. At the hospital, where police officers accompanied him after the arrest, Martinez continued

to complain of pain to his arms and was prescribed a Lortab—which contains the opioid hydrocodone—for his pain. As our court has observed, "as long as a plaintiff has suffered 'some injury,' even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force." *Solis v. Serrett*, 31 F.4th 975, 982 (5th Cir. 2022) (citation omitted); *see also Bagley*, 90 F.4th at 804 ("[T]he video evidence permits a jury to conclude that the tasing caused Bagley significant pain. And that's sufficient to state a claim of excessive force.").

Finally, because qualified immunity cases require us to linger in the details of an interaction and its distinctions from previous instances of excessive force, it is important to return to first principles. As the Supreme Court has noted, the reasonable-officer standard exists because "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 388. Qualified immunity exists to protect from liability government officers who must make tough—but reasonable—judgment calls.

Here there was no emergency, no exigency, no serious crime, no threat to anyone's safety. Officer Cantu himself admitted that he had no plans to arrest Martinez, and that he just wanted to talk to him. Martinez at most talked back to the officer, expressed his incredulity, and pulled his arm away from Officer Cantu. Our law correctly casts doubt on the notion that an officer reasonably makes a "split-second judgment" to tackle a visibly disabled, unarmed man whose only offense was walking on the wrong side of a quiet residential street in his own neighborhood.

Accordingly, I respectfully dissent.